# In re BRACKETT'S WILL.
## No. 24797.

County Judges' Court, Pinellas County.

January 9, 1958.

H. H. Baskin, Jr., and Richard C. Davis, both of Clearwater, for the proponent.

William M. Goza, Jr., Clearwater, and R. Eugene Boyd, Bellevue, Washington, for the contestants.

JACK F. WHITE, County Judge.

This cause has been heard on proceedings testing the validity of a written instrument dated June 4th, 1956 purporting to be the Last Will and Testament of Laura M. Brackett, an eighty-one year old childless widow who died a resident of Clearwater on December 29th, 1956, leaving an estate valued at $61,018.30. The petitioner for probate of the disputed will is the executor-designate A. G. Wakefield, a retired government employee who in later years has been engaged in religious work in Florida. He is not related to the decedent. The caveators and contestants are Sarah A. Cornell and Mary Leonora Brackett, the decedent's sister and sister-in-law

respectively, who are named beneficiaries in a pre-existing will of Laura M. Brackett. They are non-residents of Florida.

The will of June 4th, 1956 here involved leaves the entire estate of Laura M. Brackett to Watchtower Bible and Tract Society of Pennsylvania, an incorporated religious society the members of which are known as Jehovah's Witnesses. The proponent A. G. Wakefield is an active member and minister of said society.

The contestants object to probate of the proferred will on the ground that Laura M. Brackett did not have testamentary capacity and on the alternative ground that undue influence was exerted on behalf of the named beneficiary Watchtower Bible and Tract Society. On these issues much evidence was introduced and the cause ably argued, whereupon the court finds, concludes and adjudges as herein set forth.

The case is unusual but not unique in jurisdictions where many aged and infirm persons reside at remote distances from their relatives in other states. The validity of the contested wills of such senior citizens depends, of course, upon the facts of the particular case, and counsel are commended for eliciting what appears to be a full disclosure of the facts of this case.

Laura M. Brackett's husband died December 11th, 1948 and on June 7th, 1949 she executed a will leaving her estate to her sister, being her sole heir presumptive, and to her deceased husband's sister. Thereafter she gradually declined in health and became forgetful and erratic as a result of generalized arteriosclerosis, a progressive ailment commonly known as hardening of the arteries. On July 18th, 1956, pursuant to proceedings in this court held July 3rd-7th, she was adjudged incompetent by reason of chronic senility. Her sister was appointed guardian of her person and the First National Bank of Clearwater was appointed guardian of her property. Following her death on December 29th, 1956 the same institution was appointed curator pending the conclusion of this contest litigation and the further order of the court.

The will here in issue, dated June 4th, 1956, was executed shortly before Laura M. Brackett was adjudged incompetent, and by its terms she completely departed from a long declared testamentary intent. Her acquaintance with the proponent A. G. Wakefield had been relatively brief and was related to their mutual affiliation with Jehovah's Witnesses. She had been baptized by A. G. Wakefield in September, 1955, previous to which time their association had been casual and confined mainly to an occasional meeting at

religious services. At her home on or about February 9th, 1956 she indicated, according to A. G. Wakefield, a desire to will her estate to Jehovah's Witnesses. Thereafter, according to his own and other testimony, his visitations and attendance upon Laura M. Brackett became frequent and constant.

It was A. G. Wakefield who directly supplied the data for the preparation of the will and it was prepared by an attorney who was unknown to Laura M. Brackett and who now represents A. G. Wakefield as the proponent in these proceedings. Laura M. Brackett previously had been represented regularly by the attorney who prepared her will of June 7th, 1949, but the attorney preparing the new will was not informed of that fact. It should be noted in connection with the new will that the attorney proceeded cautiously and ethically, insisting that Laura M. Brackett first undergo a doctor's examination. Attended once by the attorney's secretary and at another time by A. G. Wakefield, Laura M. Brackett was interviewed and observed separately by two doctors whose reports conflicted. The will thereupon was signed, following reference and assent to its contents, and was witnessed by the drafting attorney and two secretaries in his office.

During the period prior to June 4th, 1956 Laura M. Brackett's sclerotic condition became more pronounced and marked changes in her appearance, speech and demeanor were observed by visiting friends and acquaintances who had known her for a considerable number of years. For example, she began to speak of her deceased husband as alive and physically present. She imagined that an airplane had dropped certain insects around her home on Clearwater Beach. She would forget, remember and again forget the promised gift of a personal article to the son of one of her friends whom she greatly admired. On occasion she did not recognize the attorney who prepared her will of June 7th, 1949 and who had constantly represented her although the attorney was then present and conversing with her. After she was injured in a fall and was hospitalized on July 14th, 1956, she referred to the same attorney as her attorney. During the same period she referred to the disposition of her estate according to her will of June 7th, 1949 as though it were still her will, indicating that she had forgotten the will here in question.

Plausible contrary inferences may be drawn from the testimony of a number of witnesses who testified forthrightly according to honest convictions, but the evidence as a whole convincingly sustains the contestants' objections based on the alleged incapacity of

4

Laura M. Brackett to make a valid will on June 4th, 1956. Inasmuch as the court so finds, inquiry into undue influence is unnecessary. Although the incidents of the association between Laura M. Brackett and A. G. Wakefield are indicative of influence which might or might not be undue in a legal sense, these incidents are more indicative of the extreme senile condition of Laura M. Brackett. Mental illness in itself does not, of course, necessarily denote testamentary incapacity; but the entire factual picture of this case impels the conclusion that Laura M. Brackett could not form and retain a plan of disposition of her estate and, moreover, could not publish any such plan in the form of a will without active guidance and direction such as the evidence abundantly discloses on the part of A. G. Wakefield.

A holding of invalidity due to incapacity would seem also to be the most charitable basis for the decision of this case. It is assumed that the proponent A. G. Wakefield, representing a zealous and sincere religious society, is a kindly man who did not realize that he was promoting the execution of a will by a person incapable of making a valid will. His good intentions may be fairly postulated but, assuming Laura M. Brackett to have been competent, it is conceivable that his well intended acts could have amounted in law to undue influence. This decision, however, does not so hold.

There is no doubt that Laura M. Brackett was kindly disposed toward Jehovah's Witnesses. She seemed kindly disposed toward everybody. She was on good terms with her sister and sister-in-law. She did resist a late suggestion that she go north to reside in her sister's home, preferring naturally to spend the rest of her days in the milder clime of Florida. She was not wholly lacking in mental perception, but she did not have a sufficiently comprehending and untrammeled mind to make a valid will. With respect to the will here involved she could not form, retain and cause to be implemented in writing the plan of disposition there set forth.

It is therefore ordered and adjudged that the writing of June 4th, 1956 which has been offered for probate is invalid because executed by one not possessing testamentary capacity, so the petition for probate thereof is denied. All motions and objections on which rulings are not indicated in the record are denied and overruled.